**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

KARL C.,[1]

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

Civil No. 25-1810 (RMB)

**OPINION**

**APPEARANCES:**

Jennfier Lilley Stonage, Esq.
Richard Lowell Frankel, Esq.
BROSS & FRANKEL, P.A.
725 Kenilworth Avenue
Cherry Hill, New Jersey 08002

    *Counsel for Plaintiff*

Abby Elizabeth Rill, Esq.
Catherine Elisabeth Hamilton, Esq.
SOCIAL SECURITY ADMINISTRATION
Office of Program Litigation, Office 3
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235

    *Counsel for Defendant*

---

[1]    Due to the significant amount of personal information and privacy concerns in Social Security cases, non-governmental parties are identified solely by first name and last initial. *See* D.N.J. Standing Order 2021-10.

**RENÉE MARIE BUMB, Chief United States District Judge**:

This matter comes before the Court upon an appeal filed by Plaintiff Karl C. ("Plaintiff") seeking judicial review of a final determination of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Social Security disability benefits. For the reasons set forth below, the Court shall **VACATE** the decision of the Administrative Law Judge (the "ALJ") and **REMAND** for proceedings consistent with this Opinion's reasoning.

## I.    PROCEDURAL HISTORY

On June 1, 2023, Plaintiff filed an application for Social Security disability benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of disability beginning December 31, 2022. His claims were first denied on July 12, 2023, and denied again upon reconsideration on November 13, 2023. [Administrative Record ("R.") at 74–88 (Docket No. 5).] Thereafter, Plaintiff filed a written request for a hearing before an ALJ. That hearing took place in person on August 8, 2024, before ALJ Karen Patterson. [R. at 36–73.] Plaintiff was represented by his attorney and provided testimony at that hearing. [R. at 44–67.] Dr. Julian Shields, an impartial vocational expert, appeared and provided testimony. [R. at 67–72.] The ALJ issued her decision on September 26, 2024, finding that Plaintiff was not disabled under the Act. [R. at 17–35.] The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. [R. at 1.] Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

## II.    LEGAL STANDARDS

### A.    The District Court's Standard of Review

The Act grants federal courts limited power to review the Commissioner's decision to deny an applicant disability benefits.  42 U.S.C. § 405(g).  While courts conduct a plenary review of all legal issues the Commissioner decides, *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)), the Act requires courts to uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence is "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). This evidentiary threshold is "not high" and "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).  It is a deferential standard, and a court cannot set aside the Commissioner's decision merely because "acting *de novo* [it] might have reached a different conclusion." *See Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986). Indeed, a court cannot "weigh the evidence or substitute [its own] conclusions for those of the [Commissioner]." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (cleaned up).

The substantial evidence inquiry, while deferential, is not a perfunctory exercise to rubberstamp the Commissioner's decision. *Kent v. Schweiker*, 710 F.2d 110, 114

(3d Cir. 1983) (explaining the substantial evidence standard is not "a talismanic or self-executing formula for adjudication," rather, the standard requires a "qualitative exercise"). Thus, when reviewing the Commissioner's decision, courts must "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (internal quotation marks and citation omitted).

Where, as here, the Appeals Council has denied a claimant's request for a review of an ALJ's decision, the "ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The ALJ's decision must have enough information to "permit meaningful judicial review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). This requires the ALJ to explain what evidence the judge considered that "supports the result" and "some indication of the evidence [the judge] rejected." *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 111 (3d Cir. 2006) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Otherwise, a reviewing court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. A court must set aside an ALJ's decision if the ALJ failed to consider the entire record or resolve an evidentiary conflict. *See Fargnoli v. Massanari*, 247 F.3d 34, 41–42 (3d Cir. 2001).

### B.    Establishing Disability under the Social Security Act

Every qualifying individual who is under a "disability" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the inability

4

"to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). "A claimant is considered unable to engage in any substantial activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Plummer v. Apfel*, 186 F.3d 422, 427–28 (3d Cir. 1999) (quoting 42 U.S.C. § 423(d)(2)(A)); *accord* 42 U.S.C. § 1382c(a)(3)(B). The burden of proving disability is on the claimant. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 174 (3d Cir. 2015) (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a)).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id*. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id*. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment,

he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" [*Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010)]. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02.

## III.   FACTUAL BACKGROUND

The Court recites herein only the facts that are necessary to its determination on appeal. Plaintiff applied for disability benefits due largely to post-traumatic stress disorder ("PTSD") stemming from his military service, as well as substance abuse disorder, anxiety, and depression.

### A.    Plaintiff's Family, Educational, and Work Background

Plaintiff was 38 years old on his alleged onset date.  [R. at 74.]  Plaintiff completed college and obtained three master's degrees.  [R. at 46.]  He is a military veteran, having served three tours in Iraq.  [R. at 67.]  The Department of Veterans Affairs (the "VA") assigned him a service-connected disability rating of 100% as of December 6, 2021, due to PTSD and substance abuse disorder.  [R. at 252–69.]

Prior to his alleged onset date, Plaintiff last worked as a management consultant.  [R. at 47.]  He was previously employed as an operations manager at a large warehouse and was largely responsible for data analysis and interpretation.  [R. at 48–49.]  Plaintiff resigned from both positions in lieu of termination due to interpersonal conflicts with his coworkers and supervisors.  [R. at 49–50, 52–53.]  He described his behavior at work as confrontational and hostile, especially towards supervisors.  [R. at 50–51.]  He also reported difficulty following through with work assignments, largely due to his difficulty with accepting instruction and criticism from supervisors.  [R. at 58, 60–61.]  According to Plaintiff, lack of control in the workplace and interactions with authority figures, like supervisors, trigger his PTSD and anxiety symptoms.  [R. at 60–61.]  Plaintiff has attempted to find work since but believes that the symptoms of his PTSD and anxiety, including regularly occurring and often lengthy panic attacks, make obtaining and retaining a job impossible.  [R. at 54–55.]

Plaintiff lives with his wife and stepdaughter.  [R. at 45.]  He testified before the ALJ that he has difficulty interacting appropriately with his wife when his

emotional state is elevated, which sometimes results in him screaming at his wife. [R. at 1417.]  Plaintiff, however, prefers "to go internal" by "go[ing] out to the woods by [him]self" camping to "spare [his] family the days of unhappiness with misery." [R. at 61.]  He reported going camping to avoid conflict at home at least six times per year, ranging from one to two weeks at a time.  [R. at 61.]

Plaintiff also has three biological children from a prior marriage who do not live with him.  [R. at 45.]  At the time of his hearing before the ALJ, Plaintiff had not seen his biological children for over a year after a judge suspended his visitation due to his aggressive, contentious conduct during his custody dispute with his ex-wife. [R. at 45, 50–52.]

### B.    Plaintiff's Medical History

Plaintiff suffers from PTSD and substance abuse disorder.  His substance abuse history largely involves consuming alcohol and marijuana in an attempt to self-medicate to alleviate the symptoms of his PTSD, such as insomnia and anxiety. [R. at 65–67.]  At the time of the ALJ hearing, Plaintiff testified to drinking alcohol only socially and using medical marijuana prescribed for his anxiety, appetite, and sleep issues.  [R. at 65.]

The medical record establishes a longstanding history of mental health struggles.  In December 2021, Plaintiff was seen at the Jefferson Hospital emergency department after calling a suicide hotline threatening to kill himself.  [R. at 365.]  The treating medical professionals described him as anxious, tearful, and withdrawn, as

8

well as depressed, angry, and irritable. [R. at 368, 372, 376.] His suicide severity risk level was noted to be moderate. [R. at 409.] He was discharged with a diagnosis of PTSD and told to follow up at the VA hospital. [R. at 370.]

Plaintiff has attended individual, group, and family therapy sessions through the VA hospital system in connection with his PTSD and substance abuse disorder. He regularly reported negative emotions, as well as issues with impulse control, anxiety, eating, and sleeping. [R. at 655–56, 676–77, 693, 746.] He also reported aggressive behavior that significantly interfered with his ability to maintain employment. [R. at 2303.] He noted to his therapist that his PTSD symptoms are more severe in work settings, stating that "when I put on my work hat, I put on my trauma hat." [R. at 2253–54.]

In February 2023, Dr. Eric Cohen of HJC Veterans Services, LLC, performed an extensive psychological examination and evaluation of Plaintiff in connection with his application for disability benefits. [R. at 514–17.] Dr. Cohen explained that Plaintiff reported having "problems with authority and supervision, interpersonal discord, marital discord that has led to periods of strife and contention, impulse control problems, memory loss of names, grossly inappropriate behavior through erratic outbursts, racing thoughts, lack of motivation, an excessive worry and sadness." [R. at 514.] Dr. Cohen described Plaintiff's PTSD as recurrent, severe, and chronic and noted that it "will remain problematic throughout the rest of his life." [R. at 515.]

9

Because of this, Dr. Cohen opined, Plaintiff is incapable of retaining and maintaining substantially gainful employment. [R. at 516.]

In May 2023, Plaintiff was admitted for nearly ten days at the Philadelphia VA Medical Center. The medical records for this stay reflect that Plaintiff suffered "severe depressive symptoms as well as PTSD and moral injury." [R. at 1512.] His initial examination was notable for irritability, dysphoric mood/affect, and psychomotor agitation in the form of pacing the halls. [R. at 1512.] Plaintiff reported poor self-care, hopelessness, and chronic thoughts of suicide. [R. at 1512.] During his stay, his providers noted that he was irritable, angry, uncooperative, and raised his voice with the staff. [R. at 1940, 1949.] His providers noted that his "treatment resistant PTSD . . . is likely contributing to his depression, chronic suicidal ideation and polysubstance abuse." [R. at 1943.]

Directly after being discharged from the Philadelphia VA Medical Center, Plaintiff was admitted for nearly a week at the Coatesville VA Hospital. [R. at 518, 525.] He was noted to have severe alcohol dependence and cannabis use disorder, as well as PTSD, insomnia, and anxiety. [R. at 520.] During this stay, Plaintiff continued receiving drug and alcohol counseling, individual psychotherapy, and group therapy. [R. at 524.]

After these inpatient stays, Plaintiff continued to attend therapy sessions with his treating psychotherapist, Julie Zavage, to work on understanding and managing his trauma triggers. [R. at 1405.] Despite these sessions, he still reported regular

anxiety, impulse control problems, and episodes of panic and anger. [R. at 1405–07, 1417.] He engaged in weekly therapy sessions with Ms. Zavage for over two years. [R. at 2558.]

In January 2024, Plaintiff requested that his mental health team write a letter on his behalf in support of his application for disability benefits. His team, however, expressed concerns about this because Plaintiff had "communicat[ed] his plan to commit suicide once he can be assured that his family is provided for financially (via disability income)." [R. at 1545.] His team worked with ethics consultants to determine the appropriate approach. [R. at 1545–46.]

Plaintiff's treating psychotherapist, Ms. Zavage, provided her own medical opinion of Plaintiff's impairments in connection with his application for disability benefits on July 30, 2024. [R. at 2558–63.] She reported treating Plaintiff for nearly three years for his chronic PTSD. She reported that Plaintiff "has participated in medication management, psychotherapy, inpatient treatment, and residential rehabilitation" with only a "moderate response" and that his "condition continues to be severe." [R. at 2558.] She further opined that Plaintiff's medications can be expected to produce some side effects that result in "difficulty focusing/concentrating for occasional (6% to 33% of an 8-hour workday) periods of time." [R. at 2558.] Her clinical findings indicated that Plaintiff suffered "significant mood fluctuations that affect functioning; significant trauma intrusions that affect focus; difficulty managing behavior when angry leading to interpersonal difficulties." [R. at 2559.] Ms. Zavage

11

opined that Plaintiff would be unable to complete a normal workday and workweek without interruptions from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods.  She further opined that he had no ability to accept instructions and respond appropriately to criticism from supervisors.  [R. at 2560.]

At the ALJ hearing, Plaintiff testified that his weight fluctuates significantly because of appetite issues that stem from his combat service.  [R. at 44–45.]  He explained that during his first tour in Iraq, he lost forty pounds and became accustomed to being hungry and ignoring hunger pains.  [R. at 45.]  He often needs to be reminded to eat meals and clean himself.  [R. at 60.]  He avoids driving because it leads to overstimulation and "out of control" anxiety.  [R. at 46.]

Plaintiff testified that his "anxiety is a pretty constant companion."  [R. at 56.] He routinely experiences violent nightmares, from which he takes hours to recover. [R. at 55–56.]  He spends hours each day pacing around his apartment due to his anxiety, often logging ten miles or more of walking.  [R. at 56.]  Prior to completing an intensive outpatient treatment, Plaintiff reported daily panic attacks.  Since then, the panic attacks have become less frequent, but still occur at least three to four times a week, "varying in intensity from a couple hours to multi-day" and requiring medication to sleep.  [R. at 57.]

C.    **Vocational Expert Testimony**

Dr. Shields, an impartial vocational expert, was asked to consider an individual with Plaintiff's age and background, who had no exertional limitations, but who was limited to understanding, remembering, and carrying out detailed but not complex instructions, and who could have no interaction with the public and only occasional interaction with co-workers and supervisors.  He testified that such an individual would not be able to perform any of Plaintiff's past work, but that other jobs existed in the national economy that the individual could perform.  [R. at 68–69.]

If, however, the individual could have no interactions with co-workers and only interaction with supervisors less than one-third of the day, there would be no work in the national economy available to that individual.  [R. at 70.]  He further testified that an individual who is off-task more than 10% of the workday, was late or left early two or more times a month, or absent more than one day per month would be unable to maintain competitive employment.  [R. at 70–71.]

IV.    **THE ALJ'S DECISION**

ALJ Patterson found that Plaintiff was not disabled.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 31, 2022.  [R. at 22.]  At step two, the ALJ found that Plaintiff had the following severe impairments: PTSD and substance abuse disorder.  She also found that he had the following non-severe impairments: degenerative disc disease of the lumbar spine and enterocolitis.  [R. at 22.]

13

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Park 404, Subpart P, Appendix 1.  She compared Plaintiff's impairments to all listed impairments, and specifically to 12.15.  [R. at 23.] The ALJ found that neither the "paragraph B" nor "paragraph C" criteria were satisfied.  [R. at 23–24.]

Prior to reaching step four, the ALJ determined that Plaintiff had the RFC to "perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to understanding, remembering and carrying out detailed, but not complex, instructions and with no production pace or hourly quotas.  He can handle occasional changes in work processes, settings and tools.  He can have occasional interaction with coworkers and supervisors, but cannot perform team or tandem work.  He cannot interact with the public."  [R. at 25.]  Then, at step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work.  [R. at 30.]  But she determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and, therefore, that Plaintiff is not disabled.  [R. at 30–31.]

Plaintiff appealed the ALJ's decision, and, on January 6, 2025, the Appeals Council denied Plaintiff's request for review.  [R. at 1.]  The ALJ's decision thus became final.  *See Chandler*, 667 F.3d at 359.  Accordingly, on March 12, 2025, Plaintiff timely sought this Court's review pursuant to 42 U.S.C. § 405(g).

14

## V.      DISCUSSION

On appeal, Plaintiff contends that the ALJ erred in three ways that each justify remand.  First, Plaintiff argues that the ALJ erred at step three in finding that Plaintiff did not meet the paragraph C criteria for medical listing 12.15.  [Pl.'s Br. at 17–23 (Docket No. 10).]  Second, Plaintiff argues that the ALJ erred in her treatment of the medical opinion evidence of record and, thus, that the RFC is inconsistent with the record evidence.  [*Id.* at 23–26.]  Finally, Plaintiff contends that the ALJ erred in her treatment of the VA's 100% permanent and total rating.  [*Id.* at 26–28.]

As the Court concludes "that the ALJ's analysis of the medical evidence was not sufficient under the regulations," and, therefore, that the RFC is not supported by substantial evidence, "the Court does not reach Plaintiff's remaining challenges to the ALJ's decision," which the ALJ may consider in the first instance on remand. *See Angela S. v. O'Malley*, 2024 WL 4563910, at *3 (D.N.J. Oct. 24, 2024) (citing *Ingandela v. Kijakazi*, 2022 WL 154422, at *9 (D.N.J. Jan. 18, 2022) (declining to address all of Plaintiff's arguments where one required remand)); *see also Pepperman v. Saul*, 2020 WL 12762927, at *2 n.3 (M.D. Pa. Nov. 4, 2020) (noting that courts within the Third Circuit "have regularly declined to address outstanding arguments raised by plaintiffs in Social Security appeal cases upon finding a sufficient basis for remand.").

### A. The ALJ's RFC Determination Is Not Supported by Substantial Evidence

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to account for attendance issues relating to the

mechanics of his treatment and the symptoms caused by his severe mental impairments. The Court agrees.

The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a working setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8P, 1996 WL 374184, at *1. "The RFC must be based on *all* the relevant evidence in the case record," including "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)" and the "[e]ffects of symptoms . . . that are reasonably attributed to a medically determinable impairment." *Id.* at *5. The Commissioner has cautioned that "[c]areful consideration must be given to any available information about symptoms because subjective description may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." *Id.*

Despite these clear guidelines, the ALJ's decision is entirely silent as to whether Plaintiff's symptoms and treatment impact his ability to sustain work on a regular and continuing basis. This is particularly notable considering the vocational expert's testimony that an individual who "might either be late, have to leave early, or be all together absent two or more times a month" is unemployable. [R. at 70–71.] According to the vocational expert, "[a]nything above ten percent" off-task or one day

16

absent per month is "work preclusive." [R. at 71.] The errors below each individually and collectively require remand for further consideration by the ALJ.

### 1.    The ALJ Did Not Consider Any Limitations or Restrictions Imposed by the Mechanics of Treatment

Plaintiff argues that the ALJ erred because the vocational expert testified that being late, leaving early, or absent two or more times a month would eliminate all jobs in the national economy, and that Plaintiff's necessary treatment schedule would make it impossible to miss fewer than two days per month. [Pl.'s Br. at 21–23.] Defendant correctly concedes that limitations or restrictions imposed by the mechanics of treatment are relevant factors in assessing a claimant's RFC. [Def.'s Opp'n at 9 (Docket No. 12).] "Substantial gainful activity means performance of substantial services with reasonable regularity." *Kangas v. Bowen*, 823 F.2d 775, 778 (3d Cir. 1987). And so, "a critical factor" that the ALJ must consider is the effect of a claimant's frequent hospitalizations, medical appointments, and other treatment "on his ability to perform any work on a regular, continuing or sustained basis." *See id.*

Plaintiff attended roughly 145 medical appointments over the course of two years related to his PTSD and substance abuse disorder. These appointments included individual, group, and family therapy sessions, as well as medication management appointments. These appointments often lasted roughly an hour and took place during normal business hours. [*See, e.g.*, R. at 655–56, 871–78, 1404–43, 1527–65, 2294–307, 2514–29.] Plaintiff was also seen at the emergency department on multiple occasions in connection with exacerbations of his PTSD and substance abuse disorder symptoms

17

[*see, e.g.*, R. at 365, 528–31, 1341] and was hospitalized for roughly two weeks in connection with an alcohol detox program and psychiatric treatment in May 2023. [*See, e.g.*, R. at 518–26; 1510–13.] His providers recommended that he consider further inpatient admission, but he declined. [R. at 1409.]

Notwithstanding this extensive treatment history, the ALJ's decision is silent on whether the mechanics of Plaintiff's treatment would interfere with his ability to work on a regular and continuing basis. Defendant defends this by arguing that *Kangas* and its progeny do not apply because the record does not show that Plaintiff had a "frequent need for hospitalization," as did the claimant in *Kangas*. [Def.'s Opp'n at 11.] But an ALJ's consideration of the mechanics of treatment is not limited to frequent hospitalizations. Indeed, SSR 96-8p describes "the mechanics of treatment" broadly. The term includes, but is not limited to, the "frequency of treatment, duration, disruption to routine, [and] side effects of medication." SSR 96-8p, 1996 WL 374184, at *5. In any event, "[a]lthough a hospitalization may be probative of the severity of an impairment, it is not required by the Listings or to show an RFC assessment incompatible with sustained work." *F.H. v. O'Malley*, 2024 WL 4821469, at *10 n.18 (E.D. Pa. Nov. 18, 2024). Despite the ALJ's recognition that Plaintiff's therapy sessions mitigated Plaintiff's PTSD symptoms [R. at 26], the ALJ never addressed whether Plaintiff would be able to work consistently without regular absences while simultaneously maintaining his treatment regimen. *See May v. Comm'r of Soc. Sec.*, 2019 WL 2315030, at *5 (D.N.J. May 31, 2019).

Defendant also argues that Plaintiff failed to make any showing that his appointments could not be scheduled around his work hours and, therefore, it was appropriate for the ALJ not to incorporate any related limitations into the RFC. [Def.'s Opp'n at 9.]  This disregards his unscheduled emergency department visits and his rather lengthy inpatient admissions.  But more to the point, it is merely speculation.  The ALJ did not explain these or any other reasons in the decision.  Indeed, despite Plaintiff having detailed his frequent therapy and medication management appointments and his emergency department visits and admissions associated with the treatment of his PTSD, the ALJ "never addressed the impact of Plaintiff's frequent need for medical and mental health treatment on [his] ability to work on a 'regular and continuing basis.'"  *Michelle C. v. Kijakazi*, 2022 WL 500568, at *6 (D.N.J. Feb. 18, 2022).  Without an explanation, the Court "cannot tell if significant probative evidence was not credited or simply ignored."  *Cotter*, 642 F.2d at 705.  The ALJ has not provided an adequate explanation that enables meaningful judicial review.  *Jones*, 364 F.3d at 505.  And given the vocational expert's testimony, this failure cannot be viewed as harmless.  *Michelle C.*, 2022 WL 500568, at *6 (collecting cases).  Accordingly, remand is required for further examination of these issues.  On remand, the ALJ may very well come to the same conclusion, but the appropriate analysis must be performed.  *See id.* at *7; *May*, 2019 WL 2315030, at *6.

### 2.    The ALJ Erred in Her Treatment of Plaintiff's Testimony and the Medical Opinion Evidence Regarding His Symptoms

The RFC determination must consider the effects of a claimant's symptoms that are reasonably attributed to a medical determinable impairment.   SSR 96-8P, 1996 WL 374184, at *5.   "The extent to which a disability may prevent regular work attendance is a relevant factor in determining whether a claimant is able to engage in substantial gainful activity." *Kangas*, 823 F.2d at 778 (quoting *Chiappa v. Sec'y of Dep't of Health, Ed. & Welfare*, 497 F. Supp. 356, 360 (S.D.N.Y. 1980)).

Plaintiff testified at length regarding his symptoms and the impact they have on his ability to function both at work and at home.   As the ALJ noted, Plaintiff testified that he suffered three to four panic attacks per week, which was an improvement over the daily panic attacks he experienced before seeking treatment.   [R. at 26, 56–57.] Plaintiff testified that his panic attacks "vary[] in intensity from a couple hours to multi-day."   [R. at 57.]   Plaintiff also testified that he goes camping alone in the woods at least six times a year for one to two weeks at a time to cope with his PTSD symptoms.   [R. at 26, 61.]

These symptoms are documented in the treatment notes from his treating psychotherapist, Ms. Zavage.   In connection with his application for disability benefits, Ms. Zavage opined that Plaintiff's "condition continues to be severe" despite his extensive treatment history.   [R. at 2558.]   She explained that his medications may cause difficulty focusing and that Plaintiff suffers from "significant trauma intrusions that affect focus."   [R. at 2558–59.]   In her professional opinion, Plaintiff is "seriously

20

limited" in his ability to "maintain regular attendance and be punctual within customary, strict tolerances," and cannot meet competitive standards with regards to "complet[ing] a normal workday and workweek without interruptions from psychologically based symptoms" or "perform[ing] at a consistent pace without an unreasonable number and length of rest periods." [R. at 2560.]

The ALJ's decision, however, does not address how, if at all, Plaintiff's PTSD and substance abuse disorder symptoms impact Plaintiff's ability to work on a regular and continuing basis. Instead, the ALJ discounted both Plaintiff's testimony about his symptoms and Ms. Zavage's opinions as inconsistent with the record evidence. [R. at 26, 28–29.] The Court addresses each in turn.

As to Plaintiff's symptoms, the ALJ found only that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the" record evidence. [R. at 26.] Yet she did not explain how Plaintiff's testimony regarding, for example, his panic attacks and need to go camping to regulate his PTSD symptoms were unsupported by and inconsistent with the record. *See* SSR 16-3p, 2016 WL 1119029, at *8 (requiring the ALJ to "explain which of an individual's symptoms [she] found consistent or inconsistent with the evidence in his or her record and how [her] evaluation of the individual's symptoms led to [her] conclusions."). Without such an explanation, this Court simply "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Plaintiff testified that he has lengthy – multi-hour to multi-day – panic attacks

21

multiple times a week and that he regularly needs to retreat alone into the woods for up to twelve weeks a year to cope with his PTSD. If credited, the effects of Plaintiff's symptoms – which must be considered in the RFC determination, pursuant to SSR 96-8p – clearly impact Plaintiff's ability to sustain full-time employment on a regular and continuing basis. The extent of that impact is for the ALJ to determine and incorporate into his RFC, as appropriate. This requires remand.

Plaintiff's testimony is corroborated by the opinions of Plaintiff's treating psychotherapist, Ms. Zavage, which the ALJ found to be unpersuasive because they were, in the ALJ's view, "inconsistent with the claimant's routine and conservative treatment." [R. at 29.] Plaintiff argues that the ALJ improperly relied upon her lay opinions as to whether Plaintiff's treatment was routine and conservative to reject medical evidence. [Pl.'s Br. at 23–24.]

"When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429. Without further explanation from the ALJ, however, the Court cannot evaluate the reasons the ALJ rejected Plaintiff's testimony and Ms. Zavage's opinions. Most notably, it is unclear to the Court on what basis the ALJ determined that Plaintiff's treatment course was "routine and conservative" and, as a result, rejected Ms. Zavage's opinions.

Plaintiff's medical record shows he attended at least 145 therapy sessions in the last two years, averaging more than one session per week and requiring both individual

22

and group therapy to manage his symptoms.  Notably, the symptoms documented in Ms. Zavage's medical notes are consistent with Plaintiff's testimony and support her ultimate opinions about his condition.  Plaintiff also has a history of emergency department visits due to exacerbation of his symptoms and one lengthy inpatient admission.  The ALJ discounts his inpatient admission in May 2023 as related only to an alcohol detox, notwithstanding the ALJ's finding that Plaintiff's substance abuse disorder is a severe impairment.[2]  [R. at 22, 29.]

It is unclear "what more treatment [the ALJ] would expect to see to support the opining provider's opinions."  [Pl.'s Br. at 24.]  It appears that the ALJ disregarded both Plaintiff's own testimony and Ms. Zavage's opinions because Plaintiff did not undergo more aggressive treatment.  But, as the ALJ recognized, Plaintiff's healthcare providers in fact recommended further hospitalizations and "a higher level of care," which Plaintiff declined.  [R. at 27–28.]  "While it is possible for the ALJ to infer the lack of medical treatment for [Plaintiff's] mental impairments is due to the lack of severity of his symptoms, the ALJ is charged with inquiring and addressing the reasons before reaching such a conclusion."  *Anderson v. Kijakazi*, 2022 WL 635539, at \*8 (M.D. Pa. Jan. 18, 2022), *report and recommendation adopted*, 2022 WL 626777 (M.D. Pa. Mar. 3, 2022); *see also* SSR 16-3p, 2016 WL 1119029, at \*8 ("We will not

---

[2]      The Court reiterates that hospitalizations are not required "to show an RFC assessment incompatible with sustained work."  *F.H.*, 2024 WL 4821469, at \*10 n.18.

23

find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). The ALJ did not consider, as required, any possible reasons why Plaintiff may not have pursued more aggressive treatment or further hospitalization. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003). Accordingly, the ALJ erred in drawing an adverse inference from Plaintiff's failure to seek more aggressive treatment or comply with further hospitalizations without "address[ing] whether that non-compliance was due to the claimant's mental illness," requiring remand. *Tobin v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4218396, at *6 (D.N.J. July 23, 2020) (collecting cases).

## VI.    CONCLUSION

For the reasons expressed above, the ALJ's decision is **VACATED**, and the case is **REMANDED** for further administrative proceedings consistent with this Opinion. An accompanying Order shall issue on this date.

/s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge

Dated: March 27, 2026

24